```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL S. McCANTS,                         :
                                            :       19-CV-9565 (AJN) (RWL)
                        Plaintiff,          :
                                            :
            - against -                     :       DECISION AND ORDER:
                                            :       MOTION TO COMPEL
TEAM ELECTRIC, INC.                         :       ARBITRATION
                                            :
                        Defendant.          :
------------------------------------------------------------X
```

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Michael McCants ("McCants" or "Plaintiff") filed this lawsuit claiming employment discrimination, harassment, and retaliation based on sex and race. Defendant Team Electric, Inc. ("Team Electric" or "Defendant") now moves to stay the action and compel arbitration pursuant to an agreement requiring arbitration. For the reasons that follow, Team Electric's motion is GRANTED.[1]

## Factual Background

McCants was an employee of Crewforce, LLC ("Crewforce"). (Ngwang Aff. ¶ 3.[2]) Crewforce provides contract labor to electrical construction companies such as Team Electric. (Ngwang Aff. ¶ 2-3.) At the time of hiring, McCants received a package of documents that Crewforce requires its prospective employees to sign. (Ngwang Aff. ¶ 4.)

---

[1] "District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." *Chen-Oster v. Goldman Sachs*, 449 F. Supp.3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases).

[2] "Ngwang Aff." refers to the Affidavit of Donald Ngwang, dated January 20, 2021 (Dkt. 32, Ex. C).

1

One of the documents is a Dispute Resolution Agreement that expressly requires arbitration of disputes between Crewforce employees and Crewforce clients to whom the employees are contracted (the "Arbitration Agreement").  (Ngwang Aff. ¶ 4; Arbitration Agreement (Dkt. 32, Ex. B, at 3-4[3]).)

The Arbitration Agreement

> sets forth the procedures' that [the employee] and Crewforce, LLC mutually agree must be used to resolve any and all "Covered Disputes" arising out of or related to [the employee's] application for employment and/or employment with Crewforce or its termination.  Covered Disputes will be resolved by final and binding arbitration and not by a court or Jury.

(Arbitration Agreement at 3)  In the second paragraph on the first page, the Arbitration Agreement expressly recites that "Covered Disputes" include not only disputes between the employee and Crewforce or other employees of Crewforce, but also between the employee "and any entity to whom you are dispatched for work and/or any employee, agent, or representative of such entity (all of whom are understood to be third-party beneficiaries of this Agreement and are entitled to enforce it), regardless of who initiates the claim regarding such dispute."  (Arbitration Agreement at 3.)  As to subject matter, Covered Disputes include, among others, harassment, discrimination, and violation of the Civil Rights Act of 1964 and a variety of other employment-related laws.  (Arbitration Agreement at 3.)  Disputes concerning the Arbitration Agreement's scope and applicability are "reserved by the parties for the Court, not for arbitration."  (Arbitration Agreement at 3.)  The last page of the Arbitration Agreement requires the employee's e-signature.

---

[3] Page numbers refer to the ECF page number, not the internal document number.

Other documents included in the Crewforce employment package include a "Final Acknowledgment" form. In addition to requiring the employee's e-signature, the Final Acknowledgment also requires the employee's e-initials in several places, including an acknowledgment that the employee has read and understood all the information in the package. (Ngwang Aff. ¶ 6; Dkt. 32, Ex. B, at 2.) An e-signature and e-initials for McCants appear throughout the employment document package produced by Team Electric, including on both the Arbitration Agreement and the Final Acknowledgment. (Dkt. 32, Ex. B, at 2, 4-18.)

In opposing the instant motion, McCants attested that "the electronic signature on the face of the [Arbitration Agreement] does not belong to me, as I have no distinct recollection of ever electronically signing such an agreement" and that he was unaware of the agreement until it was produced by Team Electric in discovery. (McCants Decl. ¶¶ 5, 7.[4]) McCants further stated that Team Electric had not provided "any circumstantial evidence that would confirm the digital signature is indeed mine or any information that would detail or confirm how the document came about." (McCants Decl. ¶ 6.) In reply, Team Electric did exactly that, providing the sworn affidavit of a Crewforce manager who explained, as set forth above, the context in which McCants signed the Arbitration Agreement and confirmed that McCants did in fact e-sign the Arbitration Agreement. (Ngwang Aff. ¶¶ 4-8.)

---

[4] "McCants Decl." refers to the Declaration of Michael McCants, dated January 6, 2021 (Dkt. 31-3).

**Procedural Background**

McCants commenced this action on October 15, 2019. (Dkt. 2.) Team Electric answered on December 12, 2019. (Dkt. 11.) On January 15, 2020, the Court entered a scheduling order requiring fact discovery to be completed by August 3, 2020, and expert discovery to be completed by October 1, 2020. (Dkt. 17.) Prompted by a request from McCants to extend by sixty days the deadline for amending pleadings and adding parties, on April 4, 2020, the Court extended all deadlines by that period of time. (Dkt. 20.) The Court then extended the deadlines by another sixty days based on a second request from Mr. McCants. (Dkt. 23.) Although McCants began the litigation representing himself pro se, counsel on his behalf appeared on August 20, 2020. (Dkt. 24.)

Team Electric did not learn of the Arbitration Agreement until September 17, 2020, when defense counsel reviewed documents provided by Crewforce to Team Electric for the purpose of responding to McCants' document requests. (McCabe Decl. ¶¶ 5, 7.[5]) As soon as defense counsel discovered the Arbitration Agreement, he notified McCants' counsel of its existence by email and attached a copy. (McCabe Decl. ¶¶ 5, 7.) The parties communicated about the import of the Arbitration Agreement over the next several weeks with no resolution. (McCabe Decl. ¶¶ 5-6.) Accordingly, on November 23, 2020, Team Electric filed the instant motion to compel arbitration. The motion was fully briefed as of January 20, 2021.

---

[5] "McCabe Decl." refers to the Declaration of Gerard McCabe, dated Oct. 29, 2020 (Dkt. 28).

**Legal Standards for Motions to Compel Arbitration**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., parties may contract to arbitrate their disputes rather than litigate them. Such agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." FAA § 2. For decades, the Supreme Court has held that, through the FAA, "Congress declared a national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *see also Doctor's Associates, Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) ("The FAA 'embodies a national policy favoring arbitration' founded upon 'a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, [their] disputes'" (alteration in original) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)); *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (quoting *Southland*).

Enacted in 1925, the FAA sought to counteract traditional judicial hostility toward arbitration, which often overrode the parties' contractual intentions. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270-72 (1995) (explaining legislative history). In this way, the FAA places arbitration agreements "upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (internal quotation marks omitted); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (noting that the Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration agreements") (internal quotation marks omitted); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 344 (2011) (reiterating that it is a "fundamental principle" of the FAA that "arbitration is a matter of contract" and that its "overarching purpose ... is to ensure the enforcement of arbitration agreements according

to their terms" (internal quotation marks omitted); *Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 104 (2d Cir. 2006) ("The rules governing arbitration, its location, the law the arbitrators will apply, indeed, even which disputes are subject to arbitration, are determined entirely by an agreement between the parties. Any arbitration proceeding is thus an extension of the parties' contract with one another, a mechanism through which they attempt to ensure compliance with the terms of that contract.").

Where a party to an arbitration agreement refuses to comply with that agreement, and instead attempts to proceed in litigation, the other party may move to stay the litigation and compel arbitration. FAA §§ 3, 4. In reviewing a motion to compel arbitration, a court "must therefore determine: (1) 'whether the parties agreed to arbitrate'; (2) 'the scope of that agreement'; and, (3) 'if federal statutory claims are asserted, ... whether Congress intended those claims to be nonarbitrable.'" *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (alteration in original) (quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987)). In accordance with the "strong federal policy favoring arbitration as an alternative means of dispute resolution," any doubts concerning the scope of arbitrable issues are resolved "in favor of arbitrability." *State of New York v. Oneida Indian Nation of New York*, 90 F.3d 58, 61 (2d Cir. 1996). A court thus "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (internal quotation marks omitted).

"Courts deciding motions to compel apply a 'standard similar to that applicable for a motion for summary judgment.'" *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 74 (2d

6

Cir. 2017) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). The party moving to compel arbitration "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010).

The moving party need not "show initially that the agreement would be *enforceable*, merely that one existed." *Id.* (emphasis in original). Thereafter, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atlantic Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000)); *see also Porcelli v. JetSmarter, Inc.*, No. 19-CV-2537, 2019 WL 2371896, at *3 (S.D.N.Y. June 5, 2019) (applying summary judgment-like standard to motion to compel). Ultimately, a court faced with a motion under FAA § 3 and FAA § 4 must determine whether "there is a valid contract to arbitrate between the [parties]," and whether the parties' dispute "is covered by the contract." *Unique Woodworking, Inc. v. New York City District Council of Carpenters' Pension Fund*, No. 07-CV-1951, 2007 WL 4267632, at *4 (S.D.N.Y. Nov. 30, 2007). If so, "the role of the court ends and the matter is one for arbitration." *Id.*

## Discussion

Team Electric has met its burden to demonstrate the existence of an agreement to arbitrate encompassing the present dispute. The parties entered into the Arbitration Agreement at the time of McCants' became employed by Crewforce. Although the present dispute is not between McCants and Crewforce, Team Electric is an express

third-party beneficiary of the Arbitration Agreement that may enforce its provisions. Covered disputes under the Arbitration Agreement thus include disputes between any Crewforce employee "and any entity to whom [the employee is] dispatched for work and/or any employee, agent, or representative of such entity (all of whom are understood to be third-party beneficiaries of this Agreement and are entitled to enforce it)." (Arbitration Agreement at 3.)  *See Gerszberg v. Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 288 (S.D.N.Y. 2016) ("It is settled that an arbitration agreement may be enforced in favor of third-party beneficiaries") (citing *Spear, Leeds & Kellogg v. Century Life Assurance Co.*, 85 F.3d 21, 26-27 (2d Cir. 1996)).

It is undisputed that McCants was a Crewforce employee dispatched for work at Team Electric. As a result, Team Electric may enforce the Arbitration Agreement against McCants. There also is no dispute, and McCants has not argued otherwise, that the subject matter of the dispute falls within the subject matter covered by the Arbitration Agreement, which expressly applies to employment discrimination and harassment cases. (Arbitration Agreement at 3.)

Nonetheless, McCants advances three principal arguments as to why the Arbitration Agreement is either inapplicable or otherwise may not be enforced. First, McCants argues, Team Electric waived its right to enforce the Arbitration Agreement because Team Electric did not assert it as a defense in its answer and waited too long to move to compel in any event. McCants' second argument posits that the Arbitration Agreement does not apply to the instant dispute because the Arbitration Agreement is between McCants and Crewforce, not Team Electric. Third, McCants contends the Arbitration Agreement is not enforceable because there is a dispute with respect to the

authenticity of McCants' electronic signature. None of those arguments withstand scrutiny.

**A.     Waiver**

As a general matter, waiver of the right to seek arbitration is considered against the well-established backdrop of the "emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530, 533 (2012) (internal quotation marks omitted). The Second Circuit has repeatedly emphasized that "waiver of the right to arbitration is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104-105 (2d Cir. 2002) (internal quotation marks omitted); *see also PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997) (same). As a result, "any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 100-01 (S.D.N.Y. 2017) (internal quotation marks omitted).

To determine whether a party has waived its right to arbitration by expressing its intent to litigate the dispute in question, courts in the Second Circuit employ a three-factor analysis, examining "'(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice.'" *Louisiana Stadium & Exposition District v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 229 (2d Cir. 2001)).

"[A]s a general rule, parties cannot participate in the litigation process only to move to compel arbitration when it strategically suits them. … Judicial economy dictates that

parties may not burden the courts, only to then jump ship to arbitration when the strategic timing suits their interests." *Chen-Oster*, 449 F. Supp. 3d at 236; *see, e.g.*, *PPG Industries*, 128 F.3d at 108-09 (plaintiff waived its right to arbitrate by "engaging in discovery" and "filing substantive motions" in a related action for "approximately five months" before moving to compel arbitration, which "evidenced a preference for litigation that supports a finding of waiver"); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (finding waiver where a party engaged in an "energetic pursuit of discovery," and waited until "the eleventh hour, with trial imminent" to seek enforcement of an arbitration agreement); *Louisiana Stadium & Exposition District*, 626 F.3d at 159-160 (finding waiver where plaintiff waited eleven months to move to compel arbitration while defendants filed procedural motions and "began work on a motion for judgment on the pleadings").

But that is not what happened here. While approximately a year passed between commencement of the action and Team Electric's assertion of the Arbitration Agreement, that is only because Team Electric did not learn of the agreement until reviewing documents it obtained from Crewforce to produce to McCants. At that point, Team Electric immediately notified McCants of the Arbitration Agreement and that Team Electric sought to enforce it.[6] McCants suggests that Team Electric is somehow at fault for not having discovered the Arbitration Agreement earlier. That is not so. There is no evidence that Team Electric had any basis on which to even look for such an agreement between McCants and Crewforce. To the contrary, Team Electric and Crewforce never had

---

[6] For the same reasons, Team Electric is not procedurally barred by the fact that it did not assert the Arbitration Agreement in its answer or before the time to amend expired, both of which events occurred before Team Electric discovered the agreement.

occasion to discuss the existence of the Arbitration Agreement as there never previously had been any disputes to arbitrate involving Team Electric and Crewforce employees. (Ngwang Aff. ¶ 4.)

As for the second waiver factor – amount of litigation – not much has happened in the litigation during the year that has passed. Indeed, at the time Team Electric discovered the Arbitration Agreement, the parties were only engaged in document discovery, and over two months remained in the fact discovery schedule as a result of the extensions sought and obtained by McCants. Depositions remained to be taken, and there had been no expert discovery. Moreover, no motions have been made, let alone decided, of any significance – no discovery motions, no dispositive motions.

Nor can McCants credibly claim to be prejudiced by the passage of time. Courts acknowledge that "[t]he key to a waiver analysis is prejudice." *Thyssen*, 310 F.3d at 105. Prejudice "'refers to the inherent unfairness – in terms of delay, expense, or damage to a party's legal position – that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'" *PPG Industries*, 128 F.3d at 107 (quoting *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 134 (2d Cir. 1997)). There is no such unfairness here.

As noted, this is not a case where the defendant laid in wait, only to spring on the plaintiff an arbitration agreement about which the defendant knew from the outset. Further, McCants seeks damages. There is no injunctive relief sought for which the passage of time would matter. There also is no indication in the record that any evidence may be lost due to dissipated memories or the like. Had that been a serious concern, McCants should not have asked for the two extensions that he did. Nor is there any

evidence of expense that has been incurred by McCants and that will be lost if the case goes to arbitration. In any event, "'pretrial expense and delay – unfortunately inherent in litigation – without more, do not constitute prejudice sufficient to support a finding a waiver.'" *Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 434 F. Supp. 2d 211, 217 (S.D.N.Y. 2006) (quoting *Leadertex*, 67 F.3d at 26); *see also Anwar v. Fairfield Greenwich Ltd.*, 863 F. Supp. 2d 346, 349 (S.D.N.Y. 2012) (delay and expense "does not reach the level of prejudice necessary to create waiver and overcome the strong federal policy favoring arbitration") (internal quotation marks omitted).

In short, Team Electric has not waived its right to compel arbitration.

**B.     Agreement with Crewforce, Not Team Electric**

McCants argues that the Arbitration Agreement has no application here because Team Electric is not a party to the agreement. That argument is readily disposed of. As explained above, Team Electric is an express third-party beneficiary of the Arbitration Agreement that may enforce its terms. (Arbitration Agreement at 3.) *See Spear, Leeds & Kellogg,* 85 F.3d at 26-27; *Gerszberg*, 215 F. Supp. 3d at 288. McCants ignores this point and does not grapple with it.[7] That is perhaps understandable as there is no escaping the fact.

---

[7] The two cases cited by McCants suggesting that the contract cannot be enforced by Team Electric are inapt as neither involved a third-party beneficiary provision as does the Arbitration Agreement in this case. *See Brown v. C. Volante Corp.*, 194 F.3d 351, 355 (2d Cir. 1999); *Thomas v. Public Storage, Inc.*, 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013). *Brown* did not even involve arbitration. In *Thomas*, the court granted the defendant employer's motion to compel arbitration, even where the employee disputed whether she e-signed the relevant agreement.

## C.     Disputed Signature

Finally, McCants asserts that the Arbitration Agreement is unenforceable because the authenticity of his signature is disputed.  There is, however, no genuine dispute.  In his declaration, McCants states that the electronic signature on the Arbitration Agreement does not belong to him because he has "no distinct recollection" of electronically signing "such an agreement."  (McCants Decl. ¶ 5.)  Having no distinct recollection (let alone any recollection at all), however, is a far cry from affirmative evidence that McCants did not electronically execute the Arbitration Agreement.  At the same time, Team Electric has provided uncontroverted evidence from Crewforce that McCants did electronically sign the Arbitration Agreement.  (Ngwang Aff. ¶¶ 4-8; Arbitration Agreement at 4.) Accordingly, there is no genuine dispute that the Arbitration Agreement is enforceable against McCants.  *See Kennedy v. City of New York*, 570 Fed. App'x 83, 84 (2d Cir. 2014) (witness' testimony claiming a lack of recollection "is not sufficient to … raise a genuine dispute of fact"); *Hughes v. Lebron*, No. 14-CV-9479, 2016 WL 5107030, at *9 (S.D.N.Y. Sept. 19, 2016) ("it is well established that a party's failure to remember what he said is not sufficient to create a genuine issue of material fact") (internal quotation marks omitted); *Movado Group, Inc. v. Caseiko Trading Co., Inc.*, 912 F. Supp. 2d 109, 116 (S.D.N.Y. 2012) ("the fact that [defendant] has no recollection of signing the document does not change its enforceability, as he has put forward no evidence other than his own lack of memory that the signature … is inauthentic").

## Conclusion

For the foregoing reasons, Defendant Team Electric's motion is GRANTED, and this action is hereby STAYED pending arbitration.  The parties shall file a joint status

report every six months, or, if earlier, within ten days following completion of arbitration.

The Clerk of Court is respectfully directed to close the motion at Dkt 27.

SO ORDERED,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: February 19, 2021
       New York, New York

Copies transmitted to all counsel of record.